UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DERRY SYKES,

Plaintiff,

-against-

NEW YORK CITY HOUSING AUTHORITY, et al.,

Defendants.

1:25-CV-9602 (LTS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff Derry Sykes, who appears *pro se*, brings this action asserting claims of federal constitutional violations, as well as claims under the Fair Housing Act ("FHA"), the Rehabilitation Act ("RA"), and the Americans with Disabilities Act ("ADA"), seeking declaratory relief, injunctive relief, and damages. Plaintiff sues: (1) the New York City Housing Authority ("NYCHA"), his landlord; (2) Jamie Rubin, the NYCHA Chair, in his official and individual capacities; (3) LAZ Parking New York/New Jersey LLC ("LAZ"); (4) Rob Maroney, LAZ's Executive Vice President; (5) Conor Buckley, LAZ's "Municipal Vice President"; and (6) Amanda Gonzalez, LAZ's Human Resources Officer.

Plaintiff has also filed a "motion of complaint pursuant to 42 U.S.C. § 3601, 42 U.S.C. § 1201, 42 U.S.C. § 12203, 42 U.S.C. § 1983, the Fourteenth Amendments of the United States Constitution" ("first motion") (ECF 3) with a supporting memorandum (ECF 4) and affidavit (ECF 5), which the Court construes as supplements to the complaint, as well as a motion for permission for electronic case filing (ECF 9). By order dated November 26, 2025, the Court granted Plaintiff leave to proceed *in forma pauperis* ("IFP") (ECF 7), that is, leave to proceed without prepayment of fees. For the reasons discussed below, the Court dismisses this action and

denies all pending motions, but grants Plaintiff 30 days' leave to replead his claims in an amended complaint, as specified in this order.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure ("Rule 8"), which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After

separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

Plaintiff resides in an apartment located in the William Taft Houses, a group of apartment buildings owned and operated by NYCHA, in New York, New York. His claims relate to his apartment and to tenant parking. As discussed below, Plaintiff has filed previous civil actions in this court about his NYCHA apartment and tenant parking, which he refers to in his complaint commencing the present action.

### A. The present action

Plaintiff filed the complaint[1] commencing the present action and his first motion on November 17, 2025.[2] His allegations can be organized into two groups: (1) those having to do with the conditions of his NYCHA apartment, his NYCHA tenancy, and his NYCHA apartment building in general; and (2) those having to do with LAZ's alleged failure to process his application for a new NYCHA parking permit.

---

[1] Rule 5.2(a)(2) of the Federal Rules of Civil Procedure requires that court submissions that refer to a person's date of birth do so by only referring to the person's birth year. Fed. R. Civ. P. 5.2(a)(2). A person who reveals their own complete date of birth in their court submissions waives the protection of this rule. Fed. R. Civ. P. 5.2(h). In his complaint, Plaintiff reveals his own complete date of birth and the complete dates of birth of two other persons who are not filers in this action. Accordingly, in an abundance of caution, the Court has directed the Clerk of Court to restrict electronic access to Plaintiff's complaint.

[2] The Court quotes from the complaint and from the Plaintiff's other submissions verbatim. All spelling, grammar, and punctuation are as in the original submissions unless noted otherwise.

### 1. Conditions of Plaintiff's apartment, tenancy, and his apartment building in general

Plaintiff asserts his claims against NYCHA and the other Defendants "for failures to make repairs, [protect his and household members'] safety and [to protect them from] hazardous conditions." (ECF 1, at 1.) He also states that he and the other members of his household have "sustained irreparable harm as consequences of NYCHA['s] negligence in making repairs to [his] apartment and having open [repair request] tickets for approximately eleven (11) months." (*Id.* at 1-2.) Plaintiff asserts that NYCHA is "failing to provide . . . adequate repairs . . . [in] an established pattern [and] practice of . . failing to provide services to fix leaks, mold, painting of plaster[ed] arrears, floor[b]oards and missing tiles." (*Id.* at 2.) He states that he "and every member of his household [are] disabled[3] . . . [and that fact] require[s] a higher priority when it comes to making repairs." (*Id.*) "NYCHA has systematically and recklessly failed in [its] obligations to protect and provide vital basic services to [P]laintiff to ensure that [he] and his household members *have a decent, secure, safe habitable living environment*." (*Id.*)

Plaintiff alleges that, on an unspecified date, he "submitted a [p]etition to NYCHA . . . , addressing lack of security for the building and the parking area due [to] growing . . . vandalism and theft of tenants['] parked vehicles, and also addressing the open drug usage and paraphernalia left in the hallways." (*Id.* at 6.) In that petition, Plaintiff "argued that [the] disregard [for] drug needle[s] and blood stains left from dope addiction [and] intravenous shooting drugs cause diseases and in the summer month[s] . . . [that] can become airborne affecting the most vulnerable tenants . . . [including] the children and the elderly." (*Id.* at 6-7.) NYCHA ignored Plaintiff's "proposal to eliminate the open drug use inside the building and in

[3] Plaintiff does not specify the disabilities of his household members.

the front and back of the building." (*Id.* at 7.) The "[d]iscarded hypodermic syringes and needle possess a toxic vapor threat that causes arboviral (arthropod borne viral) diseases and infections." (*Id.*)

Plaintiff states that "NYCHA has consistently demonstrated systemic failure[s] to make timely and adequate repairs to [P]laintiff's now pending open . . . [repair request] tickets dated December 4, 2024, pertaining to missing and damaged floor tiles caused by years of undetected water leaks similar to" the issues alleged by Plaintiff in his previous *pro se* action brought in this court known as *Sykes v. N.Y.C. Hous. Auth.*, 1:22-CV-2127 (MKV) ("*Sykes II*"). (*Id.* at 8.) These "open [w]ork [t]ickets for eleven (11) months . . . [are] consistent with the ongoing incompetent[] mismanagement, corruption, and negligence infested in this malignant culture of NYCHA that allow[s] these abuses and violations to exist and thrive." (*Id.*) Plaintiff asserts that the fact that he has had to wait for 11 months constitutes violations of federal, state, and city laws. (*See id.* at 8-9.)

"NYCHA[] has provided [P]laintiff['s] apartment with heat [for] one . . . day . . . , and that was . . . as [a] consequence of a . . . complaint [that he] filed [previously], . . . [;] the heat only came on in the living room . . . while the radiators in the rest of the apartment had no heat or hot water . . . ." (*Id.* at 9.) In addition, Plaintiff states that, "[a]s [a] consequence of NYCHA['s] failure to locate and fix the water leaks[,] [he] and his household members experienced the same deplorable conditions cited in [*Sykes II*], which increased the levels and exposure from mold and fungus growth that exist[ed] in that action." (*Id.* at 11.) Plaintiff believes that his "long-term exposure to mold/fungus and possible lead contamination" is "responsible for [him] requiring

eye surgery in 2021 resulting in 15 stiches in his right eye. (*Id.* at 17.) He also states that, "as of today[,] [his] eye[s]ight has deteriorated further."[4] (*Id.*)

"The growth and continued exist[ence] of mold and fungus in [P]laintiff's apartment constitutes a grave and dangerous health risk . . to [him] and his household members." (*Id.* at 16.) NYCHA has "fail[e]d to identify and stop the water leaks for approximately five (5) years," which is "the primary cause for the mold/fungus presence in [his] apartment." (*Id.*) The water leaks have done "significant damage[] to [P]laintiff's apartment . . . in the past five (5) years[,] . . . worsen[ed] by the fact [that his] apartment is a [RA]/Retro-Fitted Apartment [that] requires a higher priority for repairs and maintenance." (*Id.* at 17.)

Plaintiff asserts that NYCHA has increased his rent twice within 10 or 12 months, which he states, "is improper and premature," as such increases were implemented before Plaintiff was to receive his Social Security benefit increase on January 1, 2026. (*Id.* at 12.) He filed a grievance with NYCHA about that and about its "failure to [provide] a full years['] credit for [an] air conditioning unit [that he and his household] no longer had." (*Id.* at 13.) Plaintiff further states that, due to his and his household members' disabilities, they were "entitled to an additional 3% deduction" in rent. (*Id.* at 13-14.) In addition, he filed complaints with NYCHA about needing a new refrigerator, new medicine cabinet, and, apparently, a new toilet. (*Id.* at 14 n.3.) He states, however, that "filing a grievance with NYCHA is futile." (*Id.* at 15.)

[4] In the memorandum in support of his first motion, Plaintiff asserts that his "apartment became saturated with mold/fungus . . . as [a] consequence of continuous water leaks for five (5) years[,] which [he] alleges [has] cause[d] the deterioration of his eyesight leading to [his] having surgery in his right [eye] for glaucoma in 2022, and now require[s] more extensive surgery." (ECF 4, at 2.)

### 2. Parking permit application

On August 3, 2025, Plaintiff filed an application for a NYCHA parking permit for a vehicle of his "in place of [a] previous vehicle [that] has been in [a police] impound since July 3, 2025." (*Id.* at 20.) Plaintiff explained in his application that he no longer owned the vehicle that was in the impound for which he had received a previous parking permit from LAZ. (*Id.*) On August 14, 2026, LAZ sent him an email indicating that his application for a new parking permit had been approved. (*Id.*) "Then LAZ sent [him] a second email that [he] concluded was just a repeat message of the first email notification from LAZ." (*Id.*) Plaintiff's vehicle for which he assumed he had a new parking permit was then booted; it was only then that Plaintiff realized that the second email that LAZ had sent him informed him that his NYCHA parking permit application could not be processed. (*Id.* at 21.) Plaintiff's vehicle was booted on August 25, 2025; he paid $190 to have the boot removed to avoid the towing of the vehicle. (*Id.* at 22.) On September 8, 2025, Plaintiff filed a second application for a new parking permit, which is awaiting approval. (*Id.* at 21.) He then wrote to LAZ and NYCHA, on October 15, 2025, "raising concerns that . . . [LAZ's] actions were motivated in bad faith surrounding past civil actions[5] . . . [that he had] filed against . . . LAZ in this [c]ourt as pure[ly] retaliatory in nature . . . . The letter was returned to sender." (*Id.* at 21.) A neighbor of Plaintiff's found LAZ's response to Plaintiff's letter in the lobby of Plaintiff's building and brought it to him on November 3, 2025. (*Id.* at 22.) The response stated that Plaintiff "[a]lready [has] an active or waiting list account" and that his application could not be processed. (ECF 1-2, at 18.) Plaintiff and his family "rel[y] on his vehicle for medical appointments, shopping for food and household needs." (ECF 1, at 22.)

[5] Here, Plaintiff seems to reference his previous *pro se* action brought in this court known as *Sykes v. N.Y.C. Hous. Auth.*, 1:17-CV-6185 (GWG) (referred to herein as "*Sykes I*"). (*See* ECF 1, at 23.)

Because Plaintiff and his family members are disabled, they require "a parking space close to his residen[ce]." (*Id.*)

### 3. Relief sought

Plaintiff seeks, as declaratory relief, a finding that the Defendants have violated his rights under the Constitution, the FHA, and the ADA. (*Id.* at 25.) He also asks the Court to order LAZ "to expedite [his] new parking permit application." (*Id.*) Plaintiff further asks the Court to order NYCHA "to execute immediate emergency repairs of the open [repair request] [w]ork [t]ickets neglected since December 2024." (*Id.* at 25.) Plaintiff additionally seeks damages. In his first motion, he seeks an order "granting submission of [his] complaint for the violations of [his] civil rights." (ECF 3, at 1.)

## B. *Sykes v. N.Y.C. Hous. Auth.*, 1:17-CV-6185 (GWG)

Years before filing the present action, on August 15, 2017, Plaintiff filed a *pro se* action in this court against NYCHA and Greystone Parking Systems ("Greystone") asserting claims under 42 U.S.C. § 1983, the FHA, and under the ADA, as well as claims under state law. Those claims were all connected with the alleged denial of Plaintiff's applications for a NYCHA parking permit since August 2016. *See Sykes v. N.Y.C. Hous. Auth.*, ECF 1:17-CV-6185, 1 (complaint) ("*Sykes I*"). In a Stipulation and Order of Dismissal with Prejudice entered December 26, 2017, the parties agreed to the dismissal of *Sykes I* with prejudice.[6] *Sykes I*, ECF 1:17-CV-6185, 34.

[6] Plaintiff alleged, in his *Sykes I* complaint, that Greystone is "a private corporation [that] has complete authority and discretion . . . [as to] all [of] NYCHA's parking lots." (ECF 1:17-CV-6185, 1, at 1.) It is unclear what connection, if any, there is between Greystone and LAZ. Plaintiff does indicate in the present action, in his memorandum in support of his first motion, however, that *Sykes I* resulted in his receiving a "favorable settlement." (ECF 4, at 5.)

**C. *Sykes II***

On March 15, 2022, again, years before he filed the present action, Plaintiff filed another *pro se* action in this court against NYCHA, asserting claims under the FHA, the RA, the ADA, claims of federal constitutional violations, and claims under state law arising from the alleged conditions of his NYCHA apartment—the same NYCHA apartment that is the subject of the present action. *Sykes II*, ECF 1:22-CV-2127, 2, 13 (original and amended complaints). In an order dated July 22, 2022, District Judge Mary Kay Vyskocil of this court ultimately dismissed *Sykes II* for failure to state a claim on which relief may be granted, under 28 U.S.C. § 1915(e)(2)(B)(ii). *Sykes v. N.Y.C. Hous. Auth.*, No. 1:22-CV-2127 (MKV), 2022 WL 2908015 (S.D.N.Y. July 22, 2022). In that order, Judge Vyskocil noted that "Plaintiff confirmed that NYCHA had completed most of the major repairs ... but contend[ed] that . . . [*Sykes II* was] not moot as there [was] still an alleged presence of 'mold/fungi/mildew' in the apartment." *Id.* at *2 (footnote omitted).

In dismissing Plaintiff's FHA disability discrimination claims, Judge Vysocil held that:

> Plaintiff . . . alleged no facts showing that his disability was a motivating factor with respect to any adverse action that NYCHA purportedly . . . [took] against him. He merely allege[d] that he and the other members of his household are disabled, and that NYCHA . . . failed to repair his apartment, . . . but allege[d] no facts that suggest that NYCHA failed to repair his apartment *because* of his disability.

*Id.* at *4.

In addition, in dismissing Plaintiff's FHA reasonable accommodations claims, Judge Vyskocil noted that Plaintiff had acknowledged that NYCHA had completed the major repairs and had investigated his reports of the presence of mold, but "determined that no such mold was present." *Id.* Judge Vyskocil further held that:

> Plaintiff . . . alleged no facts showing that he was denied the opportunity to participate in or benefit from NYCHA's services, programs, or activities, or was

> otherwise discriminated against by NYCHA, *by reason of* his disability. He merely assert[ed] that because he and the other members of his household are disabled, the repairs that NYCHA must make to his apartment should be of a higher priority than those of other repairs that NYCHA must make.

*Id.* (citation omitted). Judge Vyskocil additionally held that, under the FHA, "'[a] plaintiff is not entitled to *preferential* enjoyment of [his] housing solely by virtue of [his] disability.' Rather, he 'must show that, but for the accommodation, [he has been denied or] likely will be denied an equal opportunity to enjoy the housing of [his] choice.'" *Id.* (citations omitted).

As to Plaintiff's claims of disability discrimination under Title II of the ADA and under the RA, Judge Vyskocil held that:

> Plaintiff . . . alleged no facts . . . showing that he was denied the opportunity to participate in or benefit from NYCHA's services, programs, or activities, or was otherwise discriminated against by NYCHA, by reason of his disability. Plaintiff [did] not allege any facts showing that NYCHA . . . failed to repair his apartment *because* of his disability.

*Id.*

With respect to Plaintiff's claims of federal constitutional violations, which were understood as brought under 42 U.S.C. § 1983, Judge Vyskocil held that: (1) because there is no underlying federal constitutional right to safe and sanitary housing, Plaintiff could not state a claim under Section 1983 against NYCHA for failure to provide him with safe and sanitary housing; and (2) to the extent that Plaintiff had asserted claims of disability discrimination against NYCHA under the Equal Protection Clause of the Fourteenth Amendment, (i) he had not alleged facts sufficient to satisfy the deliberate indifference pleading standard applicable to a Section 1983 claim arising from a governmental entity's alleged policy of failing to act, and (ii) regardless, "individuals with disabilities are not considered members of a suspect or quasi-suspect class for the purpose of an equal protection claim." *Id.* at *5-6.

Plaintiff appealed the dismissal of *Sykes II*, but the United States Court of Appeals for the Second Circuit dismissed that appeal as frivolous. *See Sykes v. N.Y.C. Hous. Auth.*, No. 22-1699, 2023 WL 3243173 (2d Cir. Feb. 1, 2023). On October 2, 2023, the Supreme Court of the United States denied *certiorari*. *Sykes v. N.Y.C. Hous. Auth.*, 144 S. Ct. 121 (2023).

## DISCUSSION

The Court construes Plaintiff's complaint as asserting claims of federal constitutional violations under 42 U.S.C. § 1983 against Defendants NYCHA and Rubin, the NYCHA chair. The Court also construes the complaint as asserting claims under the FHA against Defendants NYCHA, Rubin, LAZ, Maroney, Buckley, and Gonzalez. The Court further construes the complaint as asserting claims under the ADA and under the RA against NYCHA and Rubin, in his official capacity. The Court additionally construes Plaintiff's complaint as asserting claims under state law. For the reasons discussed below, the Court dismisses this action but grants Plaintiff leave to replead his claims in an amended complaint.

### A. Plaintiff's FHA "priority" claims and his Section 1983 "safe and sanitary housing" and equal protection claims

To the extent that Plaintiff asserts (1) claims of disability discrimination under the FHA against NYCHA and Rubin arising from NYCHA's alleged failure to prioritize Plaintiff's requests for repairs because of his and/or his household members' disabilities; (2) Section 1983 claims arising from Plaintiff's belief that he has a federal constitutional right to safe and sanitary housing; and (3) Section 1983 equal protection claims arising from alleged disability discrimination, the Court must dismiss such claims under the doctrine of issue preclusion (also known as collateral estoppel).

Issue preclusion bars relitigation of a specific legal or factual issue in a subsequent proceeding where: (1) the issues in both proceedings are identical, (2) the issue in the previous

proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity to litigate in the previous proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits. *See, e.g.*, *Grieve v. Tamerin*, 269 F.3d 149, 153 (2d Cir. 2001). It "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015) (internal quotation marks and citation omitted); *see generally Baker v. Gen. Motors Corp.*, 522 U.S. 222, 234 (1998) ("We see no reason why the preclusive effects of an adjudication on parties and those 'in privity' with them, i.e., claim preclusion and issue preclusion (res judicata and collateral estoppel), should differ depending solely upon the type of relief sought in a civil action." (footnote omitted)). "A previous dismissal for failure to state a claim is a decision made on the merits for the purpose of future applications of issue preclusion." *Curcio v. Grossman*, No. 1:22-CV-1648 (VB), 2022 WL 767167, at *4 (S.D.N.Y. Mar. 14, 2022), *aff'd sub nom.*, *Curcio v. Abrams*, No. 22-693, 2023 WL 31183 (2d Cir. Jan. 4, 2023) (summary order). The Court may, on its own initiative, raise the defense of issue preclusion. *See Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003) (citing and quoting *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998)).

In the July 22, 2022 order dismissing *Sykes II*, Judge Vyskocil made clear that Plaintiff's contention "that[,] because he and the other members of his household are disabled, the repairs that NYCHA must make to his apartment should be of a higher priority than those of other repairs that NYCHA must make[,]" was not a basis to state a claim under FHA. *Sykes*, 2022 WL 2908015, at *4. In that same order, Judge Vyskocil also made clear that there is no federal constitutional right to safe and sanitary housing. *Id.* at *5. Also, in that same order, Judge

Vyskocil made clear that "individuals with disabilities are not considered members of a suspect or quasi-suspect class for the purpose of an equal protection claim," and, therefore, Plaintiff could not "make out an Equal Protection violation premised on . . . disability." *Id.* at *6.

Judge Vyskocil dismissed *Sykes II* for failure to state a claim on which relief may be granted. *Id.* The Court notes that Plaintiff unsuccessfully appealed Judge Vyskocil's dismissal of *Sykes II* in the Second Circuit, and was denied *certiorari* as to *Sykes II* by the Supreme Court. *Skyes*, 2023 WL 3243173, *cert. denied*, 144 S. Ct. 121. Accordingly, to the extent that Plaintiff asserts, in the present action, (1) claims of disability discrimination under the FHA against NYCHA and Rubin arising from NYCHA's alleged failure to prioritize repairs to his apartment on the basis of disability; (2) Section 1983 claims arising from Plaintiff's belief that he has federal constitutional right to safe and sanitary housing; and (3) Section 1983 equal protection claims arising from alleged disability discrimination, the Court dismisses such claims, for failure to state a claim on which relief may be granted, under the doctrine of issue preclusion. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Wachtmeister v. Swiesz*, 59 F. App'x 428, 429 (2d Cir. 2003) (summary order) (a dismissal for issue preclusion is a dismissal for failure to state a claim on which relief may be granted).

**B. Remaining Section 1983 claims against NYCHA and Rubin**

Inasmuch as Plaintiff asserts any remaining claims of federal constitutional violations against NYCHA and Rubin, the Court must dismiss those claims.

**1. Section 1983 claims against NYCHA and Rubin in his official capacity**

When a plaintiff sues a municipality or other local governmental entity, such as NYCHA,[7] or one of its officials in his/her official capacity, under Section 1983, it is not enough

[7] NYCHA is a public benefit corporation created by New York State law; it has the capacity to be sued. N.Y. Pub. Hous. Law §§ 37(1)(s), 401. The liability standard applied to

for the plaintiff to allege that one of the municipality's or other local governmental entity's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality or other local governmental entity itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011); *see also Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 687 (2d Cir. 2005) ("[A Section] 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." (citing *Brandon v. Holt*, 469 U.S. 464, 471-43 (1985)). In other words, to state a claim under Section 1983 against a municipality or other local governmental entity, the plaintiff must allege facts showing: (1) the existence of a municipal or other local governmental entity policy, custom, or practice; and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted); *see also Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ("Similarly, there must be proof of such a custom or policy in order to permit recovery on claims against individual municipal employees in their official capacities, since such claims are tantamount to claims against the municipality itself."), *overruled on other grounds*, *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)). If there is no underlying constitutional violation, however, the Court need not examine whether there is

---

claims under Section 1983 against NYCHA is the same standard applied to a municipality. *See Carrero v. N.Y.C. Hous. Auth.*, 890 F.2d 569, 576-77 (2d Cir. 1989).

such liability under Section 1983. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *see also Lacen v. Aygemong*, No. 21-1964, 2022 WL 14177191, at *2 (2d Cir. Oct. 25, 2022) (summary order) (discussion in official-capacity context).

Plaintiff has alleged insufficient facts to show that NYCHA and/or Rubin, in his official capacity, via a NYCHA policy, custom, or practice, violated Plaintiff's federal constitution rights because there does not appear to be any associated cognizable underlying federal constitutional violation. As discussed above, there is no recognized federal constitutional right to safe and sanitary housing and there is no recognized equal protection violation based on disability. *See supra* at 11-13. The Court therefore dismisses these claims for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to file an amended complaint in which he alleges facts sufficient to state a claim under Section 1983 against NYCHA and/or Rubin, in his official capacity, arising from an alleged violation of his federal constitutional rights.

**2. Section 1983 claims against Rubin in his individual capacity**

The Court must also dismiss Plaintiff's Section 1983 claims against Rubin in his individual capacity. To state a claim under Section 1983 against an individual state actor, in his individual capacity, a plaintiff must allege facts showing that individual's direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks and citation omitted)). An individual defendant may not be held liable under Section 1983 solely because that individual defendant employs or supervises a person who violated the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their

subordinates under a theory of *respondeat superior*."). Rather, "[t]o hold a . . . [government] official liable under [Section] 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff has alleged nothing to suggest that Rubin was directly and personally involved in violations of Plaintiff's federal constitutional rights. Accordingly, the Court dismisses Plaintiff's Section 1983 individual capacity claims against Rubin for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). The Court, however, grants Plaintiff leave to replead his Section 1983 claims against Rubin (and/or another NYCHA official), in his/her individual capacity, in an amended complaint in which he alleges Rubin's (and/or any other NYCHA official's) direct and personal involvement in violations of Plaintiff's federal constitutional rights.

**C. Remaining FHA claims**

The Court construes Plaintiff's complaint as asserting remaining disparate-treatment disability discrimination claims and retaliation claims under the FHA.

**1. FHA claims of disability discrimination**

The FHA "broadly prohibits discrimination in housing." *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979). Among other things, it prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, . . . national origin," or "handicap."[8] 42 U.S.C. § 3604(b), (f)(2). Generally, to state a claim of

---

[8] For the purposes of the RA, the term "individual with a disability" incorporates by reference the ADA's definition of "disability." 29 U.S.C. § 705(20)(B). Under the ADA, a "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being

intentional discrimination under the FHA, a plaintiff must allege facts showing that he is "'a member of a protected class,' suffered relevant 'adverse' treatment, and '. . . [he must] sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation.'" *Palmer v. Fannie Mae*, 755 F. App'x 43, 45 (2d Cir. 2018) (summary order) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (footnote omitted)); "'[A] plaintiff need only give plausible support to a minimal inference of discriminatory motivation' at the pleading stage." *Id.* at 45-46 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)). Thus, "a plaintiff . . . [does] not need to . . . [plead] that [his] protected status was a but-for cause of the adverse action []he suffered, but only a motivating factor." *Id.* at 46 (citing, *inter alia*, *Vega*, 801 F.3d at 86); *see Gilead Cmty. Servs., Inc. v. Town of Cromwell*, 112 F.4th 93, 101 (2d Cir. 2024) (motivating-factor causation applies to FHA disparate-treatment claims).

A person asserting a claim of discrimination under the FHA cannot, however, state such a claim based on conclusory allegations. *See Palmer*, 755 F. App'x at 46; *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 73 (2d Cir. 2021). Thus, "[w]hile [a] [p]laintiff [may] allege[] reprehensible conduct on [a defendant's] part, [he does not state a claim of discrimination under the FHA if] []he alleges no facts which would make it plausible that discrimination because of [the] [p]laintiff's alleged [protected class] motivated [the defendant's] action." *Doe v. YMCA of Ne. N.Y.*, 1:19-CV-0456, 2020 WL 705264, at *7 (N.D.N.Y. Feb. 12, 2020). In addition, a plaintiff that merely complains about the adequacy of the services provided and not discrimination does not state a claim under the FHA. *See Forziano v. Indep. Grp. Home Living*

regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C). The definition of "disability" under the ADA and the definition of an individual with a disability under the RA are nearly identical to the definition of "handicap" under the FHA. *See* 42 U.S.C. § 3602(h). Thus, for the purposes of this order, the Court will use the term "disability" or "disabled" in connection with all three of these statutes.

*Program, Inc.*, No. 13-CV-0370, 2014 WL 1277912, at *9 (E.D.N.Y. Mar. 26, 2014), *aff'd*, 613 F. App'x 15 (2d Cir. 2015) (summary order).

Plaintiff does not allege anything to suggest that his disability (or his household members' disabilities) was a motivating factor as to any of the alleged adverse actions taken by any of the Defendants against him. As Judge Vyskocil noted in *Sykes II*, "[h]e merely alleges that he and the other members of his household are disabled, and that NYCHA has failed to repair his apartment," *Sykes*, 2022 WL 2908015, at *4, or, perhaps, that NYCHA did repair it, but did so inadequately—neither of which states an FHA claim of discrimination, *see id.*; *Forziano*, 2014 WL 1277912, at *9. The Court therefore dismisses Plaintiff's remaining FHA claims of disparate-treatment disability discrimination for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). The Court, however, grants Plaintiff leave to replead these FHA claims (those not those dismissed above because of issue preclusion) in an amended complaint as specified in this order.

**2. FHA claims of retaliation**

The FHA also prohibits "coerc[ion], intimidat[ion], threat[s], or interfere[nce] with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by" the antidiscrimination provisions of the FHA. 42 U.S.C. § 3617. To state a claim of retaliation under the FHA, a plaintiff must allege that he:

> (1) . . . engaged in protected activity by opposing conduct prohibited under the FHA; (2) that defendants were aware of that activity; (3) that defendants subsequently took adverse action against plaintiffs; and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse action.

*Lynn v. Vill. of Pomona*, 373 F. Supp. 2d 418, 432 (S.D.N.Y. 2005), *aff'd*, 212 F. App'x 38 (2d Cir. 2007) (summary order).

"The term 'protected activity' refers *to action taken to protest or oppose statutorily prohibited discrimination*." *Favourite v. 55 Halley Street, Inc.*, 381 F. Supp. 3d 266, 278 (S.D.N.Y. 2019) (Román, D.J.) (internal quotation marks and citation omitted). It includes informal means, such as letters "'if . . . lodged in protest of statutorily prohibited discrimination.'" *Evans v. Bronxworks, Inc.*, 1:24-CV-7507 (LJL), 2025 WL 3469952, at *9 (S.D.N.Y. Dec. 3, 2025) (citation omitted). It also includes previous FHA lawsuits. *See, e.g.*, *Marks v. BLDG Mgmt. Co. Inc.*, No. 1:99-CV-5733 (THK), 2002 WL 764473, at *10 (S.D.N.Y. 2002), *aff'd*, 57 F. App'x 501 (2d Cir. 2003) (amended summary order). But letters written and complaints made for other reasons, including apartment conditions by themselves, are not protected activity. *See, e.g.*, *Wilson v. Wilder Balter Partners, Inc.*, No. 7:13-CV-2595 (KMK), 2015 WL 685194, at *13 (S.D.N.Y. Feb. 17, 2015); *cf. United States v. Weisz,* 914 F. Supp. 1050, 1054 (S.D.N.Y. 1996) (Haight, D.J.) ("[T]o bring a claim within [Section] 3617 [of the FHA], a plaintiff must allege conduct on the part of a defendant which in some way or other implicates the concerns expressed by Congress in the FHA. If it were otherwise, the FHA would federalize any dispute involving residences and people who live in them.").

"[F]or purposes of retaliation, an adverse action is any action that would be sufficiently severe to deter a reasonable person in the plaintiff's position from participating in a protected activity." *Burris v. Hous. & Servs. Inc.*, No. 17-CV-9289 (JGK), 2023 WL 1966120, at *9 (S.D.N.Y. Feb. 13, 2023). A plaintiff can show a causal connection: "'(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow [individuals] who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Id.* at *9 (quoting *Natofsky v. City of New York*, 921 F.3d 337, 353

(2d Cir. 2019)); *see also Gilead Cmty. Servs., Inc.*, 112 F.4th at 101 (motivating factor causation also applies to FHA retaliation claims).

Plaintiff alleges nothing to suggest that his complaints and letters to NYCHA and to LAZ constitute protected activity; they appear to be general complaints about the conditions of his apartment, his apartment building, the surrounding grounds, and the parking situation; they do not appear to have anything to do with discrimination. Plaintiff also does not allege facts sufficient to show a causal connection between the filing of *Sykes I*[9] and *Sykes II* and any alleged adverse actions. The Court therefore dismisses these claims for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(ii). The Court grants Plaintiff leave to replead these claims in an amended complaint in which he allege facts sufficient to state a claim of retaliation under the FHA.

**D. Reasonable accommodation disability discrimination**

The Court construes Plaintiff's complaint and supplements as also asserting that Defendants failed to reasonably accommodate his disability by, among other things, denying him a parking permit. Plaintiff does not, however, allege facts sufficient to state such a claim under the FHA, Title II of the ADA, or the RA.

The FHA prohibits "a housing provider's 'refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling.'" *Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 156 (2d Cir. 2014) (quoting 42 U.S.C. § 3604(f)(3)(B)). Under the FHA, "[a]ggrieved persons have long been permitted to assert [FHA] claims against individual

[9] Plaintiff has not specified what relationship, if any, Greystone, the Defendant in *Sykes I*, has with LAZ.

defendants who engaged in affirmative acts of discrimination or enforced a corporation's discriminatory rules or policies." *Andujar v. Hewitt*, No. 02-CV-2223 (SAS), 2002 WL 1792065, at *10 (S.D.N.Y. Aug. 2, 2002) (collecting cases).

Under the RA, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Thus, to show that a defendant is subject to the RA, "a plaintiff must show that [that] defendant[ ] receive[s] federal funding."[10] *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

Title II of the ADA forbids discrimination against persons with disabilities in, among other areas of public life, public services, programs, and activities. *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004). It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[11] 42 U.S.C. § 12132. Unlike the FHA, neither Title II of the ADA nor the RA provides for liability of individual defendants in their individual capacities. *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).

To state an FHA reasonable accommodations claim, a plaintiff must allege facts showing:

> (1) that the plaintiff . . . [has a disability] within the meaning of [the FHA]; (2) that the defendant knew or reasonably should have been expected to know of the [disability]; (3) that the accommodation was likely necessary to afford the [disabled] person an equal opportunity to use and enjoy the dwelling; (4) that the

---

[10] The Court assumes, for the purposes of this order, that NYCHA receives federal funding.

[11] The NYCHA is a public entity for the purposes of the ADA. *See, e.g.*, *Sykes v. N.Y.C. Hous. Auth.*, No. 1:22-CV-2127 (MKV), 2022 WL 875902, at *4 n.2 (S.D.N.Y. Mar. 24, 2022).

> accommodation requested was reasonable; and (5) that the defendant refused to make the requested accommodation.

*Olsen*, 759 F.3d at 156. Courts have held that:

> [b]ecause "[t]he relevant portions of the FHA, ADA, and . . . the [RA] offer the same guarantee that a covered entity, such as a public housing authority, must provide reasonable accommodations in order to make the entity's benefits and programs accessible to people with disabilities," "analysis of a reasonable accommodation claim under the three statutes is treated the same."

*Logan v. Matveevskii*, 57 F. Supp. 3d 234, 253 (S.D.N.Y. 2014) (Karas, D.J.) (citation omitted).

With respect to reasonable accommodations claims under Title II of the ADA and the RA, "where an individual challenges 'the substance of the services provided'—rather than 'illegal discrimination'—there is no ADA [or RA] violation." *Tardif v. City of New York*, 991 F.3d 394, 405 (2d Cir. 2021) (quoting *Pfrommer*, 148 F.3d at 84). Thus, a plaintiff does not state a claim of discrimination under Title II of the ADA and the RA when he "attack[s] the adequacy of the services provided." *Greene v. City of New York*, 773 F. Supp. 3d 94, 110 (S.D.N.Y. 2025) (Preska, D.J.) (citing cases). As mentioned above, the same is true with respect to such claims under the FHA. *See Forziano*, 2014 WL 1277912, at *9.

The Court will assume, for the purposes of this order, that Plaintiff is disabled as defined by all three statutes. His complaint, however, does not allege facts sufficient to show that any of the Defendants discriminated against him because of his (or his household members') disabilities. His claims of discrimination only challenge the adequacy of the services provided. *See Tardif*, 991 F.3d at 405; *Greene*, 773 F. Supp. 3d at 110; *Forziano*, 2014 WL 1277912, at *9. Accordingly, the Court dismisses these claims for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). The Court, however, grants Plaintiff leave to replead these claims in an amended complaint in which he alleges facts sufficient to state reasonable accommodations claims under the FHA, Title II of the ADA, and the RA.

**E. Retaliation claims under the ADA and the RA**

Plaintiff may also be attempting to assert retaliation claims under the ADA and the RA. To state such a claim under either statute, Plaintiff must satisfy the same standard as discussed above with respect to an FHA retaliation claim. *See supra* at 18-20. Accordingly, the Court dismisses Plaintiff's claims of retaliation under the ADA and the RA, for failure to state a claim on which relief may be granted, for the same reasons that the Court dismissed Plaintiff's FHA retaliation claims. *Id.*; *see* § 1915(e)(2)(B)(ii). The Court grants Plaintiff leave to replead such claims in an amended complaint in which he alleges sufficient facts.[12]

**LEAVE TO AMEND GRANTED**

Plaintiff proceeds in this matter without the benefit of an attorney. Federal district courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the United States Court of Appeals for the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112

[12] While it is not clear, Plaintiff may be additionally attempting to assert Section 1983 retaliation claims against NYCHA and/or Rubin, arising from his filing of *Sykes II* and/or his filing of his letters, petitions, or other complaints to NYCHA and/or Rubin. To the extent that Plaintiff raises such claims, the Court dismisses them, for failure to state a claim, because he fails to allege facts sufficient to show that NYCHA and/or Rubin took adverse action against him because he complained about or opposed discrimination. *See* § 1915(e)(2)(B)(ii); *Vega*, 801 F.3d at 91 (elements of a Section 1983 retaliation claim). Even if, as with the filing of *Sykes II*, Plaintiff's letters, petitions, and other complaints to NYCHA and/or Rubin were protected activity, Plaintiff does not allege facts showing that, but for that protected activity, NYCHA and/or Rubin would not have caused the alleged adverse actions to have been taken against him. *See Vega*, 801 F.3d at 90 (causation standard for a Section 1983 retaliation claim). The Court, however, grants Plaintiff leave to replead these claims as well.

(2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state valid claims under federal law, as specified above, the Court grants Plaintiff 30 days' leave to replead those claims in an amended complaint.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action. The effect of that judgment will be the dismissal of Plaintiff's claims under federal law for failure to state a claim on which relief may be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), and the Court's declination of consideration, under its supplemental jurisdiction, of Plaintiff's claims under state law, *see* 28 U.S.C. § 1367(c)(3).

**CONCLUSION**

The Court dismisses this action for the reasons set forth in this order. The Court, however, grants Plaintiff 30 days' leave to replead his claims, as specified above, in an amended complaint.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action. The effect of that judgment be the dismissal of Plaintiff's claims under federal law for failure to state a claim on which relief may be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), and the Court's declination of consideration, under its supplemental jurisdiction, of Plaintiff's claims under state law, *see* 28 U.S.C. § 1367(c)(3).

In light of the defects in Plaintiff's complaint and supplements, the Court denies Plaintiff's first motion. (ECF 3.) The Court therefore directs the Clerk of Court to terminate ECF 3.

In Plaintiff's motion for permission for electronic case filing, Plaintiff asserts that he completed the court's CM/ECF introduction course in 2011. But there is no record of Plaintiff ever completing the course. Accordingly, the Court also denies that motion (ECF 9) without prejudice to Plaintiff's filing another such motion after Plaintiff has completed that course. The Court therefore also directs the Clerk of Court to terminate ECF 9.

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court further directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated: September 11, 2026
New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge